Case: 1:26-mj-00070
Assigned To: Judge Harvey, G. Michael
Assign. Date: 4/2/2026
Description: COMPLAINT W/ARREST WARRANT

## STATEMENT OF FACTS

1.      On March 30, 2026, at approximately 6:20 p.m., Officers with the Metropolitan Police Department ("MPD") and Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), were contacted by a Detective ("Detective 1") with the Arlington County Police Department regarding threats made by an individual against his ex-girlfriend. Specifically, Victim 1 ("V-1") told Detective-1 that her ex-boyfriend, Arnold Dussol ("DUSSOL"), had threatened to kill both her and her current boyfriend ("V-2"). V-1 further stated that she knew DUSSOL possessed a firearm and that she feared for her life.

2.      V-1 told Detective-1 that she believed DUSSOL wanted her to meet him at his storage locker in Washington, D.C. At approximately 6:08 p.m. on March 30, 2026, DUSSOL provided V-1, by text, his current location. Specifically, DUSSOL sent V-1 a screenshot of his location at 833 7th Street Northwest, Washington, D.C., which Detective-1 then forwarded to law enforcement. Detective-1 also advised law enforcement that he knew DUSSOL to be a convicted felon.



**Screenshot of the text DUSSOL sent V-1 containing his location at** ████████
████████████████

3.    At approximately 6:38 p.m., law enforcement responded to the area of ███████ ███████, a busy mixed-use corridor in Northwest Washington, D.C., and began canvassing for DUSSOL. This address led law enforcement to a PNC Bank located on the corner of 7th Street Northwest and I Street Northwest.

4.    During that canvass, Detective-1 provided MPD with a screenshot, sent by DUSSOL to V-1 at approximately 6:13 p.m., with instructions for accessing a storage locker room inside a ███████ ███████████████████████████████████████████. Specifically, as depicted below, the storage locker was located on the P-3 level of the garage. V-1 had previously provided those screenshots to Detective-1, who then forwarded that information to the MPD officers and ATF agents. Detective-1 advised that V-1 believed she was supposed to meet DUSSOL at that storage locker.



**Screenshot of the access code DUSSOL provided to V-1 containing the storage locker room and access code**

5.    The address DUSSOL provided for the storage locker led law enforcement to an entrance to an underground parking facility adjacent to Carmine's Restaurant located in the high-trafficked area of D.C.'s Penn Quarter.



**The entrance to the parking facility located at** ███████████.

6.　　V-1 also provided Detective-1 with a description of DUSSOL, which Detective-1 relayed to MPD. Specifically, DUSSOL was described as: "Wearing all black. Should have a backpack on", "Beanie on. Possibly carrying a red target bag", and "Thinks gun is in there."

7.　　Initially, law enforcement was unable to locate the storage facility within P3 level. At approximately 6:51 p.m., after receiving additional information from that access to the storage facility required entry through a locked door, law enforcement returned to the P3 level and accessed the facility using the access code DUSSOL provided to V-1.

8.　　Once inside, law enforcement began clearing the storage area. During that sweep, law enforcement observed one of the storage lockers in the main hallway was unsecured and did not have a lock on it. When law enforcement opened the locker, DUSSOL was standing directly behind the door.  DUSSOL was wearing black pants, a black shirt, a black jacket, a black beanie and had a purple satchel bag worn across his chest- consistent with the description provided by V-1.



**DUSSOL wearing the purple satchel bag at the time he was removed from the storage locker.**

9.      DUSSOL was located hidden inside a secure storage facility that required a code for entry, which he had provided to V-1 and was positioned directly behind the locker door where no one could see him in a confined space within the facility. According to V-1, DUSSOL had arranged to meet her at that location and was believed to be in possession of a firearm.

10.      While law enforcement was placing DUSSOL in handcuffs, Investigator Perez conducted a pat down of DUSSOL. Investigator Perez removed the purple satchel bag from DUSSOL's body, opened it, and observed a black handgun inside.



**DUSSOL's purple satchel with black handgun located inside.**

11.    The firearm recovered in DUSSOL's satchel appeared to be a weapon that was designed to, or that could readily be converted to expel a projectile by the action of an explosive. Specifically, it was a Bersa, model BP9CC, 9mm caliber, pistol bearing serial number K93166. The firearm had 1 round of ammunition in the chamber and 6 rounds in the attached magazine. DUSSOL did not have a license to carry a firearm.



**The firearm recovered in DUSSOL's satchel.**

12.     A search incident to arrest of DUSSOL also revealed a clear bag with a white rock substance, weighing approximately 1.13 grams. A portion of that substance was field tested, which was positive for methamphetamines.

13.     At approximately 8:15 p.m., MPD officers interviewed V-1 in person at her residence. V-1 reported that earlier that day, DUSSOL and V-1 had crossed paths and walked to a corner store together, where DUSSOL began cursing out V-1's current boyfriend, V-2. During the conversation DUSSOL showed V-1 a handgun, which she described as being stored in a black holster inside a blue/purple fanny pack within a Target bag. DUSSOL then followed V-1 back to her residence where she told DUSSOL that he could not enter. DUSSOL then began yelling at V-2 through the window. Afterwards, V-1 and DUSSOL exchanged multiple text messages, copies of which. V-1 provided to law enforcement

14.     DUSSOL has multiple convictions for crimes punishable by a term of imprisonment greater than one year.  In 2012, DUSSOL was convicted in Stanford County Circuit Court case number 179CR1100094500 of Felony Exort in Writing. For that crime, he received a 4-year, 2-day suspended sentence. In 2015, DUSSOL was convicted in Fairfax County Circuit Court case number 059CR15F0010121 for Felony Weapon Possess by a Felon (Not a Firearm). For that crime, he received a sentence of 3 years' incarceration with 2 years suspended. In 2017, DUSSOL was convicted in in Montgomery County, Maryland case number 123606C of Assault in the First Degree. For that crime, he received a sentence of 15 years' incarceration with 5 years suspended. Lastly, in 2022, DUSSOL was convicted in Fairfax County, Virigina, in case number 059CR23F0002681 of Felony Drugs: Distribute/Sell for Profit Schedule I or II. For that crime, he received a sentence of 5 years' incarceration. As such, on the date of his arrest in the instant case, DUSSOL was aware that he had been previously convicted of a crime that was punishable for more than a year. A check of police records revealed DUSSOL was not licensed to possess a firearm in the District of Columbia, nor was the firearm registered in the District of Columbia.

15.     There are no firearms or ammunition manufacturers in the District of Columbia. Therefore, the firearm and ammunition described above necessarily traveled in interstate commerce before they were recovered in the District of Columbia. Based on the facts contained in this affidavit, there is probable cause to believe that Arnold DUSSOL unlawfully possessed a firearm and ammunition after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

Respectfully submitted,

_____
Jacob Drew
Investigator, Badge #IV1909
Metropolitan Police Department

Subscribed and sworn by telephone pursuant to Federal Rule of Criminal Procedure 4.1 on April 2, 2026.

_____
HON. G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE